Mark **GOLDRICK**, Plaintiff,

v.

**D. M. PICTON COMPANY**, Defendant.

Civ. A. No. 195–71–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Aug. 19, 1971.

C. Arthur Rutter, Jr., Norfolk, Va., for plaintiff.

Charles F. Tucker, Norfolk, Va., for defendant.

OPINION AND ORDER

KELLAM, District Judge.

Plaintiff, a member of the crew of the SS PORT ARTHUR, owned and operated by D. M. Picton Company, asserts he was injured aboard the defendant's ves-

sel on or about August 11, 1970. Service of process was obtained by serving the State Corporation Commission of Virginia. Defendant moves to quash and vacate such service upon the ground that defendant is a foreign corporation with offices in Texas, that it is not doing business in the Commonwealth of Virginia, and that the cause of action did not arise out of any business done in the Commonwealth.

The facts are not in dispute. Defendant is a wholly owned subsidiary of Moran Towing Corporation (Moran). Neither defendant nor Moran has qualified to do business in Virginia. However, for the purpose of the defendant's motion, it stipulated that Moran was in fact transacting business in Virginia. Defendant was not doing or transacting any business in Virginia.[1] Crew for the tug PORT ARTHUR is supplied by the Seaman's International Union, with crew members being furnished by the Union on a demand basis at ports up and down the coast.

It was stated at the time of argument on the motion that plaintiff is a resident of Virginia.

Counsel agree that the issues are:

1. Is defendant doing business in Virginia because its parent company (also a foreign corporation) is doing business in Virginia?

2. Does the fact that Seaman's International Union furnishes crewmen for defendant's tug—some of whom come from the Union Hall at Norfolk —constitute doing business in Virginia?

It is not suggested that there is no real distinction between Moran and defendant, its wholly owned subsidiary. Nor is it suggested that the separate entity is not fully observed. It is not suggested that any of the officers or directors of the two corporations are the same.

■■ The Court must have jurisdiction *in personam* of the defendant in order to entertain this action and render judgment. Unless it be waived, jurisdiction *in personam* requires valid service of process within the territorial limits of Virginia. Federal Rules of Civil Procedure, Rule 4(f). While § 8–60 of the Code of Virginia provides for service on a foreign corporation, and § 13.1–111 of the same Code provides how such process may be served, it is required both by Virginia and Federal law that the corporation be doing business or transacting affairs in Virginia under the facts of this case to constitute valid service. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. But, here, counsel agree the issue is whether the fact Moran, the parent company, is doing business in Virginia permits service on defendant.

The leading case in the United States dealing with the issue of service of process as between parent company and subsidiary is Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). There, plaintiff Cannon, a North Carolina corporation, had a contract with the parent, Cudahy Packing Co., a Maine corporation. It brought suit in North Carolina against the parent corporation and served the statutory agent of Cudahy of Alabama, a wholly owned subsidiary. In affirming a judgment dismissing the action for want of jurisdiction, the Court, in part, said:

The main question for decision is whether, at the time of the service of process, defendant was doing business within the State in such a manner and to such an extent as to warrant the inference that it was present there. Bank of America v. Whitney Central National Bank, 261 U.S. 171 [, 43 S. Ct. 311, 67 L.Ed. 594]. In order to

---

1. A representative of defendant did come to Fort Eustis, Virginia, to get the names of two persons who had been discharged from the Army Transportation Corps.

show that it was, the plaintiff undertook to establish identity *pro hac vice* between the defendant and the Alabama corporation. The Alabama corporation, which has an office in North Carolina, is the instrumentality employed to market Cudahy products within the State; but it does not do so as defendant's agent. It buys from the defendant and sells to dealers. In fulfilment of such contracts to sell, goods packed by the defendant in Iowa are shipped direct to dealers; and from them the Alabama corporation collects the purchase price. Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely; and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. This corporate separation from the general Cudahy business was doubtless adopted solely to secure to the defendant some advantage under the local laws.

\* \* \* \* \* \*

The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the State in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. Bank of America v. Whitney Central National Bank, 261 U.S. 171 [, 43 S.Ct. 311, 67 L.Ed. 594]. It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one State shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 177– [178, 43 S.Ct. 312, 67 L.Ed. 596]. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali Works, 190 U.S. 406, 409– [411, 23 S. Ct. 728, 47 L.Ed. 1113]; Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U.S. 364 [27 S.Ct. 513, 51 L. Ed. 841]; and People's Tobacco Co., Ltd. v. American Tobacco Co., 246 U. S. 79, 87 [, 38 S.Ct. 233, 62 L.Ed. 587]. In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction.

The above case has been cited numerous times with approval by the United States Supreme Court, appellate courts and trial courts.

Harris v. Deere & Company, 128 F. Supp. 799 (E.D.N.C.1955), affirmed 223 F.2d 161 (4th Cir. 1955), where facts were similar to those in the *Cannon* case, cited and followed that case, saying:

Nor has Congress yet provided "that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein".

In a *per curiam* opinion affirming the *Harris* case, the Court of Appeals said:

It is not for us, however, to overrule or modify decisions of the Supreme Court; and until the doctrine of the line of cases to which we have referred is overruled or modified, it cannot be said that a corporation is doing business within a state merely because a wholly owned and controlled subsidiary is selling its product there, if the separate corporate entities are observed and the subsidiary has purchased the goods which it is selling and is not selling them as agent of the manufacturer.

■ The doing of business of a subsidiary corporation in a state does not without more confer jurisdiction over the non-resident parent corporation. Peterson v. U-Haul, 8 Cir., 409 F.2d 1174, 1184; Blount v. Peerless Chemicals, 316 F.2d 695 (2d Cir. 1963), cert. denied Colbert v. Peerless Chemicals, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62; Graveley Motor Plow & Cultivator Co. v. H. V. Carter Co., 193 F.2d 158 (9th Cir. 1951); Wireline, Inc. v. Byron Jackson Tools, Inc., 239 F.Supp. 955 (D.C.Mont. 1964); Scalise v. Beech Aircraft Corp., 276 F.Supp. 58 (E.D.Pa.1967); Mid-Continent Telephone Corp. v. Home Telephone Co., 307 F.Supp. 1014 (N.D. Miss.1969).

■■ And the converse of the above principle is true, the service of process on the parent company does not permit the Court to exercise personal jurisdiction over the wholly owned subsidiary, if they are two separate distinct entities and so operate. Associated Metals & Minerals Corp. v. SS RIALTO, 280 F. Supp. 207 (S.D.N.Y.1967). In the last cited case the Court said there was "no basis whatever for finding Economic (the subsidiary company) present in this State because its parent is present here. Economic does not through its parent engage in any activities here." Here, like in the last cited case, there is no justification for disregarding the separate existence of the parent corporation and the subsidiary corporation.

■ The fact that Moran contracted with the Union to furnish crews for its vessels and vessels of its subsidiaries, and crewmen for defendant went from Virginia to serve on vessels of defendant in North Carolina, does not justify assuming jurisdiction. Here, Moran has not been served.

In Ratliff v. Cooper Laboratories, Inc., 444 F.2d 745 (4th Cir. decided June 29, 1971), it was held that the district court did not have jurisdiction under the facts there cited. In part the Court said:

If "plaintiff's injury does not arise out of something done in the forum state, then other contacts between the corporation and the state must be *fairly extensive* before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.'" F. James, Civil Procedure 640 (1965). (Emphasis added.) See Hanson v. Denckla, *supra*, [357 U.S. 235,] at 251 [78 S.Ct. 1228, 2 L.Ed. 1283]; Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437 [, 72 S.Ct. 413, 96 L.Ed. 485] (1952); Volkswagen Interamericana, S. A. v. Rohlsen, 360 F.2d 437 (1st Cir. 1966); von Mehren and Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1137–38, 1142–44 (1966).

The motion to quash and vacate the proposed service of process and/or to deny jurisdiction is granted and the action is dismissed without prejudice to the right of the plaintiff to proceed as he deems best.